# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| JENNIFER A. DISALVATORE, | : | |
| Plaintiff, | : | |
| vs. | : | CA 14-0485-C |
| CAROLYN W. COLVIN, | : | |
| Acting Commissioner of Social Security, | : | |
| Defendant. | | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying her claims for a period of disability, disability insurance benefits, and supplemental security income. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 16 & 18 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.").) Upon consideration of the administrative record, plaintiff's brief, the Commissioner's brief, and the arguments of counsel at the October 29, 2015 hearing before the Court, it is determined that the Commissioner's decision

denying benefits should be reversed and remanded for further proceedings not inconsistent with this decision.[1]

**I. Procedural History, Standard of Review, and the ALJ's Decision**

**A. Procedural History**

On May 10, 2011, Plaintiff filed an application for Disability Insurance Benefits alleging a disability onset date of June 30, 2010. (Tr. 154–155, 156–162). On the same day, Mrs. DiSalvatore also filed an application for Supplemental Security Income (herein "SSI") benefits (Tr. 163-171), with a protective filing date of April 25, 2011 (*See* Tr. 66).[2] The claims of Mrs. DiSalvatore for benefits were initially denied by notice dated June 17, 2011 (Tr. 69-73, 74-79).

On July 13, 2011, Mrs. DiSalvatore requested a hearing (Tr. 82-83). Pursuant to that request, a hearing was held on October 31, 2012 before an Administrative Law Judge ("ALJ") (Tr. 43-65). Following that initial hearing, the ALJ ordered an additional psychological evaluation. An evaluation was arranged for November 19, 2012, and the record was supplemented with the report from that additional evaluation (Tr. 751-59 & 760-62).

A supplemental hearing was held on April 10, 2013 (Tr. 29-42). Following the supplemental hearing, the ALJ issued a decision dated May 1, 2013 denying

---

[1] Any appeal taken from the judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 16 & 18 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

[2] "Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq*. Under both provisions, disability is defined, in part, as an 'inability to engage in any substantial gainful activity' due to 'a medically determinable physical or mental impairment.' 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A)." *LePage v. Colvin*, 2015 WL 5734836, *1, n. 1 (E.D. Cal. Sept. 29, 2015)

Mrs. DiSalvatore the benefits for which she applied (Tr. 12-28). Mrs. DiSalvatore timely requested review of the ALJ's decision by the Appeals Council in a request for review dated May 22, 2013 (Tr. 7 & 9), but the Appeals Council denied Mrs. DiSalvatore's request for review by notice dated September 4, 2014 (Tr. 1-6), thus making the ALJ's decision of May 1, 2013 the final decision of the Commissioner of Social Security. Mrs. DiSalvatore, having exhausted her administrative remedies, timely filed the present civil action requesting judicial review of the Commissioner's decision, which is ripe for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

**B. Standard of Review**

A claimant is entitled to an award of disability insurance benefits or supplemental security income when she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or last for a continuous period of not less than 12 months. *See* 20 C.F.R. §§ 404.1505(a), 416.905(a) (2016). In determining whether a claimant has met her burden of proving disability, the Commissioner follows a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step one, if a claimant is performing substantial gainful activity, she is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b). At the second step, if a claimant does not have an impairment or combination of impairments that significantly limits her physical or mental ability to do basic work activities (that is, a severe impairment), she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). At step three, if a claimant proves that her impairments meet or medically equal one of the listed impairments set forth in Appendix 1 to Subpart P of Part 404, the claimant will be considered disabled without

consideration of age, education and work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d). At the fourth step, if the claimant is unable to prove the existence of a listed impairment, she must prove that her physical and/or mental impairments prevent her from performing her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). And at the fifth step, the Commissioner must consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g).

Plaintiff bears the burden of proof through the first four steps of the sequential evaluation process, *see Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987), and while the burden of proof shifts to the Commissioner at the fifth step of the process to establish other jobs existing in substantial numbers in the national economy that the claimant can perform,[3] the ultimate burden of proving disability never shifts from the plaintiff, *see, e.g., Green v. Social Security Administration,* 223 Fed.Appx. 915, 923 (11th Cir. May 2, 2007) ("If a claimant proves that she is unable to perform her past relevant work, in the fifth step, 'the burden shifts to the Commissioner to determine if there is other work available in significant numbers in the national economy that the claimant is able to perform.' . . . Should the Commissioner 'demonstrate that there are jobs the claimant can perform, the claimant must prove she is unable to perform those jobs in order to be found disabled.'").[4]

---

[3] *See, e.g., McManus v. Barnhart,* 2004 WL 3316303, *2 (M.D. Fla. Dec. 14, 2004) ("The burden [] temporarily shifts to the Commissioner to demonstrate that 'other work' which the claimant can perform currently exists in the national economy.").

[4] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

4

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny Plaintiff benefits, on the basis that she is capable of performing her past relevant work as a bookkeeper, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[5] Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. Appx. 995, 996 (11th Cir. Apr. 1, 2010) (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). And, "[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence." *Id.*, citing *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1158-1159 (11th Cir. 2004).

**C. ALJ's Decision**

The ALJ determined that Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2013. (Tr. 17). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity from June 30, 2010, the alleged onset date, through the date of his opinion. (*Id.*) At step two, the ALJ found that the Plaintiff suffered from the

---

[5] This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

5

following severe impairments: obesity; bipolar disorder; personality disorder; anxiety disorder; hypertension; and asthma. (*Id*.) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18). At step 4, the ALJ determined that the Plaintiff has the residual functional capacity ("RFC") to perform a limited range of sedentary work. (*See* Tr. 20). He further found that Plaintiff was limited to work that will only require that she: lift and carry up to 100 pounds occasionally, 20 pounds frequently, and 10 pounds continuously; sit 4 hours at one time and 6 hours during an 8-hour workday; stand and/or walk 2 hours at one time and 4 hours during an 8-hour work day; frequently reach, handle, finger, feel, push, and pull; frequently operate foot controls; occasionally climb ladders or scaffolds; frequently climb stairs and ramps; frequently balance stoop, kneel, crouch, and crawl; never work around unprotected heights, humidity, wetness, dust, odors, fumes, and pulmonary irritants; occasionally work around moving mechanical parts, extreme temperatures and vibrations; frequently operate a motor vehicle; and **occasionally interact with the general public and supervisors.** (*Id.*) The ALJ determined that Plaintiff could return to her past relevant work as a bookkeeper (DOT Code 210.382-014), which is a sedentary, skilled occupation. (Tr. 23). **Furthermore, he found that this work does not require the performance of work-related activities precluded by Plaintiff's RFC**. (Tr. 20-23).

**II. Analysis**

Plaintiff raises three issues on appeal. As stated by Plaintiff, they are:

1. The ALJ erred in rejecting the opinions of Mrs. DiSalvatore's treating psychiatrist, Donna Earnshaw, M.D. Mrs. DiSalvatore has been treated by the healthcare professionals at the Baldwin County Mental Health Center, including her treating psychiatrist, Dr. Earnshaw, since December of 2010 (Tr. 665-79, 711-12, 720, 723-24, 741-42, 743-48, 773).

2. The ALJ erred in failing to properly assess the credibility of Mrs. DiSalvatore.

3. Whether the ALJ properly determined that the Plaintiff's past relevant work as a "bookkeeper" was in fact past relevant work, given that the Plaintiff's bookkeeper work was sheltered work and does not qualify as past relevant work.

The undersigned has reviewed the record, the briefs of the parties and listened to oral arguments. After this review, it is determined that the ALJ's decision to deny benefits at the fourth step of the sequential evaluation process is not supported by substantial evidence. Since this decision requires a remand for further consideration of Claimant's petition for disability benefits, it is not necessary for this Court to address all of plaintiff's other assignments of error. *See Pendley v. Heckler,* 767 F.2d 1561, 1563 (11th Cir. 1985) ("Because the 'misuse of the expert's testimony alone warrants reversal, we do not consider the appellant's other claims.").

### A. Whether Claimant is Able to Perform Her Past Work as a Bookkeeper as Normally Required by Employers in the National Economy.

Claimants seeking disability benefits clearly are responsible for showing that they are unable to perform past relevant work as they actually performed it, or as it is performed in the general economy. *Waldrop v. Commissioner of Social Sec.,* 379 Fed.Appx. 948, 953 (11th Cir. May 21, 2010), citing *Jackson v. Bowen,* 801

F.2d 1291, 1293-1294 (11th Cir. 1986). Even so, the Commissioner has the obligation to develop a full and fair record in order to prevent speculation or conjecture on such a critical question. *Schnorr v. Bowen,* 816 F.2d 578, 581 (11th Cir. 1987) ("Where there is no evidence of the physical requirements and demands of the claimant's past work and no detailed description of the required duties was solicited or proffered, the Secretary cannot properly determine whether the claimant has the residual functional capacity to perform his past relevant work.") (citing *Nelms v. Bowen,* 803 F.2d 1164, 1165 (11th Cir.1986) and *Cowart v. Schweiker,* 662 F.2d 731, 735 (11th Cir.1981)). Toward that end, an ALJ must consider all of the duties of past relevant work and evaluate a plaintiff's ability to perform the past relevant work in spite of her impairments. *Levie v. Commissioner of Social Sec.,* 514 Fed.Appx. 829, 831 (11th Cir. Mar. 25, 2013), citing *Lucas v. Sullivan,* 918 F.2d 1567, 1574 n. 3 (11th Cir. 1990) (remanding for evaluation of all of claimant's impairments and the effect they have on her ability to fulfill the duties of her past relevant work). In those instances where claimants are found to have the ability to perform a past relevant job even with severe impairments, the ALJ's opinion should contain the following specific findings of fact: "1. A finding of fact as to the individual's RFC. 2. A finding of fact as to the physical and mental demands of the past job/occupation. 3. A finding of fact that the individual's RFC would permit a return to his or her past job or occupation." SSR 82-62, 1982 WL 31386, *4 (1982).[6] In cases, like this one, that involve "a

---

[6] "Social Security Rulings are agency rulings published under the Commissioner's authority and are binding on all components of the Administration. Even though the rulings are not binding on us, we should nonetheless accord the rulings great respect and deference[.]" *Klawinski v. Commissioner of Social Sec.,* 391 Fed.Appx. 772, 775 (11th Cir. Aug. 6, 2010) (citations omitted).

8

mental/emotional impairment, care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety ... in order to determine if the claimant's mental impairment is compatible with the performance of such work." *Id.* at *3. ALJs are required to make "every effort ... to secure evidence that resolves the issue as clearly and explicitly as circumstances permit." *Id.*

Social Security Ruling 82–61 recognizes three possible tests for determining whether or not a claimant retains the capacity to perform her past relevant work. They are as follows:

> 1. Whether the claimant retains the capacity to perform a past relevant job based on a broad generic, occupational classification of that job, e.g., "delivery job," "packaging job," etc.[7]
>
> 2. Whether the claimant retains the capacity to perform the particular functional demands and job duties peculiar to an individual job as he or she actually performed it.
>
> 3. Whether the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy.[8]

*Id.* Under § 404.1520(e) of the Commissioner's regulations, a claimant will be found to be "not disabled" when it is determined that she retains the residual functional capacity to perform the actual functional demands and job duties of a particular past relevant job or the functional demands and job duties of the

---

[7] As recognized in the ruling, use of this test is likely to be "fallacious and insupportable" because "[w]hile 'delivery jobs,' 'packaging jobs,' etc., may have a common characteristic, they often involve quite different functional demands and duties requiring varying abilities and job knowledge."

[8] The Dictionary of Occupational Titles' descriptions can be relied upon to define the job as it is usually performed in the national economy.

occupation as generally required by employers throughout the national economy. *Id*.

At step 4, the initial issue to be resolved by the ALJ is the question of whether the claimant retains the ability, given her limitations, to perform her past relevant work as it was actually performed. SSR 96-8p ("At step 4 of the sequential evaluation process, the RFC must not be expressed initially in terms of the exertional categories of 'sedentary,' 'light,' 'medium,' 'heavy,' and 'very heavy' work because the first consideration at this step is whether the individual can do past relevant work as he or she actually performed it."); 1996 WL 374184, at *3. Claimants are considered the primary sources for this vocational information, and "statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work." SSR 82-62 at *3. As additional sources, ALJs are also given the discretion to obtain vocational information from a VE or the Dictionary of Occupational Titles ("DOT") in aid of resolving the question of whether claimants are able to actually perform the duties of their prior jobs. 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2); SSR 82–61.

If the ALJ determines that the claimant lacks the RFC to complete the tasks and duties of her former jobs as they were actually performed, the next issue at the fourth step becomes whether she would be able to perform her former jobs as they were generally performed in the national economy. SSR 96-8p. The sources generally consulted to obtain evidence that will assist in resolving this issue are the DOT and the testimony of a VE. If the testimony of the VE is contradicted by the DOT, the VE's testimony trumps the DOT. *Jones v. Commissioner of Social Sec.*,

423 Fed.Appx. 936, 938 (11th Cir. Apr. 19, 2011), citing *Jones v. Apfel*, 190 F.3d 1224, 1229-1230 (11th Cir. 1999).

In this action, the initial inquiry of whether the Claimant was able to perform the duties of her prior job as it was actually performed was skipped or omitted from the ALJ's analysis. Instead, after an RFC was established and the VE had classified the Plaintiff's prior jobs within the DOT, the ALJ found that she was able to perform the job of bookkeeper as it was described in DOT Code 210.382-014. (Tr. 23).[9] The VE was not asked whether the Plaintiff would be able to perform the bookkeeper job she identified in light of the limitations imposed by her RFC, nor was any explanation given as to why the Plaintiff was not able to perform any of the other jobs identified by the VE.

The Plaintiff was asked to provide vocational information about her prior work and her reasons for not being able to perform any of the prior jobs she listed. Some of the information came from forms that she completed and filed with the Commissioner and the rest was provided through her testimony. The claimant testified on two occasions: October 31, 2012 (Tr. 43-65) and April 10, 2013 (Tr. 29-42). During her testimony on October 31, 2012, she reported a variety of work that she had performed in the past. The list includes data entry, minor accounting, dealing blackjack at a casino, answering phones, helping with corporate paperwork, making payroll, supervising other employees and

---

[9] Although the VE identified several job classifications in response to the ALJ's question of whether she was "able to match it up with any work that appears in the Dictionary of Occupational Titles[,]" the only job the ALJ found that Mrs. DiSalvatore was able to perform was that of a bookkeeper. In addition to bookkeeper, the other former jobs were identified as: data entry, DOT number 203.582-054, sedentary, semi-skilled, SVP 4; gambling dealer, DOT number 343.464-010, light, semi-skilled, SVP 3; telephone solicitor, DOT number 299.357-014, sedentary, semi-skilled, SVP 3; and receptionist, DOT number 237.367-038, sedentary, semi-skilled, SVP 4. (Tr. 23).

scheduling. During the hearing held on April 10, 2013, upon additional questioning by the ALJ regarding her prior occupations, she reported working for Ken Chatfield and Jennifer Chatfield with duties of "answering phones", "doing some of – some more corporate paperwork like kind of accounting" and ultimately she was responsible for "more of the managerial paperwork" and supervising "the girls answering the phones … like doing scheduling and stuff." (*Id*. at 35).[10]

In response to the ALJ's question of why she felt she could no longer perform the tasks required in her former jobs, she identified the stress that overwhelmed her and told him how desperately she wanted to be relieved of any responsibility of speaking with or dealing with the public. (*Id*. at 36). She also testified that the Chatfields attempted to work with her by taking away any responsibility for answering the phones and allowing her to focus on paperwork and supervision of the girls on staff. (*Id*. at 36-37). Eventually, the Chatfields sold the business to the claimant and her husband and she assumed the accounting duties but found that working at the office was too stressful and was allowed to work from home where there were "no girls, no phones, no nothing." (*Id*. at 37). Her testimony was that even after trying to work from home, she failed because she was "foggy-brained" and "became like a zombie." (*Id*. at 37-38). Her testimony was that she could not handle working in her former jobs or completing her home chores because "the smallest things freak [her] out." (*Id*.) The Plaintiff also identified her IBS condition as a contributor to stress in the

---

[10] The Work History Report dated May 22, 2011 (Tr. 469) listed jobs of bookkeeper, receptionist, call center representative, blackjack/roulette dealer, cashier, data entry clerk, and office temp (*id*. at 470). She also completed a work background report that was included in the record (*see* Tr. 511-514).

12

workplace that was made a "little worse" after several changes had been made to her medication. (*Id*. at 39).

Since all the Plaintiff's testimony regarding her prior jobs and the physical and mental demands of those jobs were not discussed by the ALJ, it is difficult to discern what his findings were with regard to Plaintiff's ability to perform a prior job as it was actually performed. From the opinion, it is clear that the ALJ ruled out all former jobs except for that of bookkeeper. In addition, since the ALJ did not discuss or identify the specific job requirements, both physical and mental, of her former work as a bookkeeper, it appears that he determined that she could not perform those duties because of the significant work-related limitations and moved to the next question of whether she could perform the job of bookkeeper as generally required in the national economy.

In reaching the conclusion that the Plaintiff could perform the duties of a bookkeeper as generally required, the ALJ first determined that Mrs. DiSalvatore's ability to perform the full range of sedentary work was limited by her mental RFC and non-exertional impairments. (Tr. 20 ("The claimant has the residual functional capacity to perform sedentary work … except the claimant is limited to work which will only require the claimant to: … frequently reach, handle, finger, feel, push, and pull; frequently operate foot controls; occasionally climb ladders or scaffolds; frequently climb stairs and ramps; frequently balance, stoop, knee[l], crouch, and crawl; never work around unprotected heights, humidity, wetness, dust, odors, fumes, and pulmonary irritants; occasionally work around moving mechanical parts, extreme temperatures and vibrations; frequently operate a motor vehicle; and occasionally interact with the general public and supervisors.")). When the ALJ compared the Plaintiff's limitations

with the work demands of a bookkeeper as delineated in the DOT, he found that she would be able to perform the duties of a bookkeeper.  This important finding was made, however, without asking the VE, who was available during the hearing, if Mrs. DiSalvatore would be able to perform the general duties of a bookkeeper given the specific limitation of only being able to occasionally interact with the general public and her supervisors. Since the DOT description of duties does not specifically account for this limitation, and the record does not contain any evidence that would support the conclusion that bookkeeper jobs in the national economy would be available to an applicant with this particular mental/emotional limitation, the finding by the ALJ is without evidentiary support.

      The clear failure of the ALJ to carefully explore the physical and mental requirements of the Claimant's former work as a bookkeeper and further, to complete the record with vocational evidence that the DOT classification of bookkeeper would be available for people with Claimant's specific RFC, prevents this Court from being able to find that substantial evidence is contained in this record to support the conclusion that the Plaintiff is able to perform the job of bookkeeper as required in the national economy.  A remand is necessary so that the Commissioner will have an opportunity to identify the actual physical and mental requirements of Plaintiff's former work as a bookkeeper and whether she is able to return to that job. A remand will also allow the Commissioner an opportunity to fill the void of evidence supporting the conclusion that a plaintiff with this RFC would be employable as a bookkeeper generally. *Cf. Waldrop, supra*, 379 Fed.Appx. at 952–53 (ALJ's decision affirmed where VE provided both the DOT identification number for a former position *and testimony that*

*demonstrated that the claimant could perform the identified job as it is performed in the general economy even with the limitations identified in the RFC).*

**B. Whether Plaintiff's Former Work as a Bookkeeper Constitutes Past Relevant Work.**

Past relevant work is work that the claimant (1) performed within the last fifteen years, (2) lasted long enough for the claimant to learn how to do the work, and (3) was performed at the level of substantial gainful activity. 20 C.F.R. §§ 404.1565(a), 416.965(a). "Substantial work activity" is work that involves doing significant physical or mental activities and includes part-time work. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work activity done for pay or profit. 20 C.F.R. §§ 404.1572(b), 416.972(b). To determine whether a claimant performed substantial gainful activity, the ALJ ordinarily will consider whether wages derived from the work activity exceed minimum thresholds. 20 C.F.R. §§ 404.1574(b), 416.974(b). "If a claimant receives wages exceeding those set out in an earnings guidelines table, a presumption arises that she was engaged in substantial gainful activity during that period." *Green v. Commissioner, Social Sec. Admin.*, 555 Fed.Appx. 906, 908 (11th Cir. Feb. 10, 2014), citing 20 C.F.R. §§ 404.1574(b)(2); 416.974(b)(2); and *Johnson v. Sullivan*, 929 F.2d 596, 598 (11th Cir. 1991) (noting that earnings on income tax returns create a rebuttable presumption that the taxpayer was gainfully employed).

If the prior work was performed under special conditions, however, those conditions must be considered and may lead to a finding that the claimant's

prior work was not substantial gainful activity. 20 C.F.R. §§ 404.1573(c), 416.973(c).[11]

> The Commissioner relies on certain guides to determine if the claimant is engaged in substantial gainful activity, including the nature of the claimant's work, how well she performed, how much time she spent at work, and whether her work was done under special conditions or in a sheltered workshop. *Id.* §§ 404.1573; 416.973. Special work conditions may consist of receiving assistance from other employees, permission to take frequent rest breaks, and permission to work at a lower standard of productivity. 20 C.F.R. §§ 404.1573(c); 416.973(c). Importantly, however, work done under special conditions can still constitute substantial gainful activity. *See* 20 C.F.R. §§ 404.1573(c); 404.1574(a)(1), (a)(3), (b)(2); 416.973(c), 416.974(a)(1), (a)(3), (b)(2).

*Green*, 555 Fed.Appx. at 908.

---

[11] These sections of the Commissioner's regulations read, in their entirety, as follows:

> The work you are doing may be done under special conditions that take into account your impairment, such as work done in a sheltered workshop or as a patient in a hospital. **If your work is done under special conditions, we may find that it does not show that you have the ability to do substantial gainful activity.** Also, if you are forced to stop or reduce your work because of the removal of special conditions that were related to your impairment and essential to your work, we may find that your work does not show that you are able to do substantial gainful activity. However, work done under special conditions may show that you have the necessary skills and ability to work at the substantial gainful activity level. Examples of the special conditions that may relate to your impairment include, but are not limited to, situations in which—
> (1) You required and received special assistance from other employees in performing your work;
> (2) You were allowed to work irregular hours or take frequent rest periods;
> (3) You were provided with special equipment or were assigned work especially suited to your impairment;
> (4) You were able to work only because of specially arranged circumstances, for example, other persons helped you prepare for or get to and from your work;
> (5) You were permitted to work at a lower standard of productivity or efficiency than other employees; or
> (6) You were given the opportunity to work, despite your impairment, because of family relationship, past association with your employer, or your employer's concern for your welfare.

*Id.* (emphasis supplied).

As previously stated, the ALJ found that plaintiff was not disabled because she could perform her past relevant work as a bookkeeper as it is generally performed (Tr. 23 ("The claimant is capable of performing past relevant work as a bookkeeper (DOT Code 210.382-014), which is a sedentary, skilled occupation.")). Plaintiff argues, however, that the ALJ erred when he determined that her past work as a bookkeeper was relevant work because it was performed under special circumstances due to her severe limitations. In this regard, even though the ALJ did ask a vocational expert to "match up" Plaintiff's prior work experiences with DOT titles, exertional levels and SVP numbers, there were no questions asked about whether she was working under special circumstances, i.e., receiving an unspecified subsidy from her employers during the period of time that she served as his bookkeeper. (*See* Tr. 64-65). In fact, there is no analysis by the ALJ regarding the possibility that there was a discrepancy between the actual work performed by the Plaintiff and the salary paid to her by her employers. Plaintiff's testimony was that she was unable to work in the office of the carpet and air duct cleaning business because of her problems with interacting with the public, her inability to handle the stress involved, and because confrontations with customers led to migraine headaches. (Tr. 52-54).

The Commissioner's response to this argument is to take the position that since the ALJ found that the Plaintiff's testimony was not fully credible, her testimony regarding the special work conditions established by her husband was also discredited, although the ALJ never says that he did not believe that portion of her testimony. Secondly, the Commissioner argues that Plaintiff's position that the ALJ should have ensured that the record accurately recorded the conditions under which she worked as a bookkeeper is misdirected because it

17

was her burden to show that the actual productive work as a bookkeeper was not substantial gainful employment because of the special conditions granted her because of her physical and mental impairments.

A review of the record reveals that Plaintiff reported working as a bookkeeper from 2006 through 2009 with three different companies. These companies were all engaged in the business of cleaning carpets and air ducts. The companies were KenJen Enterprises, Inc., (2006-2007), Best Care Services Incorporated (2008), and Priority Carpet & Air Duct Cleaning Specialists, Inc. (2009). (Tr. 178-180 & 470-473).

Plaintiff testified that her work duties for KenJen Enterprises began with answering phones and performing accounting for the corporation. (Tr. 35-36). These duties expanded to include managerial paperwork, supervising others charged with answering the phones, and scheduling. (*Id.* at 36). These responsibilities, according to the Claimant's testimony, became "overwhelming" because of her inability to "deal with people." (*Id.*) She also testified that during this term of employment, her employer worked with her to accommodate her anxiety over dealing with other people by allowing her to stop answering phones and focus on supervising the other office staff and to take on additional responsibilities involving completion of paperwork. (*Id.* at 36-37).

Plaintiff and her husband, Luciano DiSalvatore, Jr., then purchased the business from KenJen and established a new company, Best Care Services. (*See id.* at 37). Plaintiff took over the accounting responsibilities for this new business. (*Id.*) Her problems with this work continued, however, requiring that she perform her duties from home but even that change failed because she became so

"foggy-brained" that she could not work and they were forced to start hiring people. She testified that she felt like a "zombie." (*Id.* at 37-38).

Plaintiff and her husband then tried another business, Priority, but she was not able to work, either business-related tasks or her chores at home. (*See id.* at 38). After her husband's sudden death, she was unable to continue the business and was losing her home. (*See id.* at 47). So, she moved in with a relative and now lives with a male friend who provides for her support. (*See id.*)

Although it is clear that the ALJ discredited that portion of Plaintiff's testimony regarding the severity of her impairments and their limitations on her ability to be gainfully employed, there is no specific rejection of her testimony that she was allowed to work as a bookkeeper under special conditions. (*See* Tr. 20-23). The Plaintiff's evidence, both documentary and testimonial, supports her position that she has arguably rebutted the presumption that she was engaged in substantial gainful employment from 2006 to 2009 because that work was performed under special conditions, i.e. her work requirements were changed to alleviate stress, her employers allowed irregular work hours, assigned work thought to be suited to her problems with stress and anxiety, allowed her to work from home, expected less from her than other employees and eventually hired others to do her work. While the Court is confident that the evidence of the Plaintiff's earnings in this case raises a rebuttable presumption that she was gainfully employed as a bookkeeper, without an analysis of the evidence she presented that she was working under special conditions and that her earnings should have been adjusted downward, the record does not provide substantial evidence to support the implicit findings of the ALJ that even if Plaintiff worked under the special conditions she described, her prior work as a bookkeeper was

performed at a level of substantial gainful employment, thus meeting the criteria for past relevant work.

On remand, the Commissioner will have an opportunity to consider this argument by the Plaintiff in greater detail.

### III. Conclusion

The Court **ORDERS** that the decision of the Commissioner of Social Security denying plaintiff benefits be reversed and remanded pursuant to sentence four of § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), for further proceedings not inconsistent with this decision. The remand pursuant to sentence four of § 405(g) makes plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *see Shalala v. Schaefer*, 509 U.S. 292, 112 S.Ct. 2625, 125 L.Ed.2d 239 (1993), and terminates this Court's jurisdiction over this matter.

**DONE** and **ORDERED** this the 19th day of September, 2016.

s/WILLIAM E. CASSADY  
**UNITED STATES MAGISTRATE JUDGE**
